**JUDGE GRIESA**

# 12 CIV 1031

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DUAL GROUPE, LLC,                                    Case No.

                                   Plaintiff,

                      -against-                        COMPLAINT
                                                      AND JURY DEMAND

GANS-MEX LLC, GINZA PROJECT, LLC and
TATIANA BRUNETTI,                                    FEB 9 2012
                                                     U.S.D.C. S.D. N.Y.
                                   Defendants.       CASHIERS
------------------------------------------------------------------X

Plaintiff Dual Groupe, LLC ("Dual Groupe"), by and through its attorneys, as and for its

Complaint against defendants Gans-Mex LLC ("Gans-Mex"), Ginza Project, LLC ("Ginza") and

Tatiana Brunetti ("Brunetti") (collectively, "defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This case arises out of the defendants' deliberate and willful infringement of Dual

Groupe's trademark, "MPD" (the "Mark") through their unauthorized use of the Mark in

connection with their restaurant operation in the Meatpacking District at 73 Gansevoort Street,

New York, New York.

2. Defendants' actions have irreparably harmed Dual Groupe and caused and continue

to cause confusion and harm to the public, who are being mislead by defendants' false,

deceptive, and infringing use of the Mark.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to Title 28, United

States Code, Sections 1331, 1338, and 1367(a), because the federal claims stated herein arise

under Title 15 of the United States Code and the state law claims stated herein form part of the

same case or controversy as the claims that are subject to the Court's original jurisdiction.

4. Pursuant to Title 28, United States Code, Section 1391, venue is proper in this judicial district because a substantial part of the events and omissions giving rise to the claims asserted herein occurred here and material witnesses reside within this judicial district.

## PARTIES

5. Plaintiff Dual Groupe is a limited liability corporation organized under the laws of the State of New York with its principal place of business located at 9 West 19th St., 2nd Fl., New York, New York 10011.

6. Defendant Gans-Méx, upon information and belief, is a limited liability corporation organized under the laws of the State of New York with its principal place of business located at 411 W. 14th St., 4th Fl., New York, New York 10014.

7. Defendant Ginza, upon information and belief, is a limited liability corporation organized under the laws of the State of New York with its principal place of business located at 41 E. 20th St., New York, New York 10003. Upon information and belief, Ginza is and was at all times relevant herein the owner or one of the owners of Gans-Mex.

8. Defendant Brunetti, upon information and belief, is and was at all times relevant herein a member or managing member of Gans-Mex and Ginza. Upon information and belief, Brunetti is an individual currently residing in New York, New York and has a place of business at 73 Gansevoort Street, New York, New York 10014.

## FACTUAL ALLEGATIONS

A.    The Management Agreement And Licensing Of The Mark

9. On or about December 21, 2009, Dual Groupe and Gans-Mex entered into a Management Agreement whereby Gans-Mex engaged Dual Groupe to develop, operate and manage a new restaurant in a restaurant space owned by the defendants in the Meatpacking

District at 73 Gansevoort Street, New York, New York.  (A true and correct copy of the Management Agreement is attached hereto as Exhibit A).

10.  The Management Agreement provided that Dual Groupe "shall have full control and discretion over the operations of the premises" and "shall have the right to control all aspects of the Restaurant including but not limited to promotions, entertainment, hiring and firing personnel, determining hours over such personnel and setting staff count."  (Management Agreement, ¶¶ 3.1, 3.11).

11.  The Management Agreement also provided for the licensing of the Mark by Dual Groupe to Gans-Mex for use in connection with the new restaurant.  Specifically, the Management Agreement provided that, so long as Dual Groupe was engaged to manage the restaurant, Dual Groupe agreed to "license to [Gans-Mex] the use of the brand MPD on a royalty free basis at the Restaurant."  (Management Agreement, ¶ 3.9).

12.  Dual Groupe was to be paid a "management fee" for its work based on a percentage of the gross receipts from the restaurant.  The management fee was to be calculated according to a schedule set forth in the Management Agreement, as follows:

> (i) Eight and a Half Percent (8.5%) of the Gross Receipts of the Restaurant from zero ($0.00) and up to Three Million Dollars ($3,000,000.00) (ii) Ten Percent (10%) of the Gross Receipts of the Restaurant from Three Million One Dolllars ($3,000,001.00) and up to Three Million Five Hundred Thousand Dollars ($3,500,000.00) (iii) Twelve Percent (12%) of the Gross Receipts of the Restaurant from Three Million Five Hundred Thousand One Dollars ($3,500,001.00) and up to Four Million Dollars ($4,000,000.00) (iv) Fifteen Percent of the Gross Receipts of the Restaurant from Four Million One Dollars ($4,000,001.00) and above.

(Management Agreement, ¶ 3.2).

13.  In addition, the Management Agreement provided for payment to Dual Groupe of

"twenty (20%) of the Gross Receipts of the Saturday and Sunday Brunch which is to take place on the premises." (Management Agreement, ¶ 3.3).

B.     The Success Of MPD Restaurant

14. Pursuant to the Management Agreement, Dual Groupe conceived and developed an upscale French-American restaurant concept under the MPD brand called "MPD Restaurant".

15. MPD Restaurant opened for business in October 2010, at 73 Gansevoort Street. (Information about MPD Restaurant can be found at <mpdnyc.com>).

16. Dual Groupe operated and managed MPD Restaurant's business from its inception.

17. As a result of Dual Groupe's efforts, MPD Restaurant became enormously successful, both critically and financially. It is recommended in the 2012 Michelin Guide and is a winner of the OpenTable Top 10 Diner's Choice award (voted by 2,049,400 diners). It is one of the most popular restaurants in the Meatpacking District today. (A true and correct of the Michelin Guide recommendation is attached hereto as Exhibit B. A true and correct copy of the list of the OpenTable diners' choice winners is attached hereto as Exhibit C).

18. During the 15-month period from October 2010 to January 2012, MPD Restaurant generated revenues of $5,445,551, which exceeded all parties' expectations. Revenues are expected to continue growing this year.

19. As a result of the financial success of the restaurant, Dual Groupe earned substantial management fees pursuant to the Management Agreement. In 2011, Dual Groupe earned management fees totaling $363,989.10.

4

C.   The Defendants' Unlicensed And Unauthorized Use Of The Mark
     After Attempting To "Cut Out" Dual Groupe To Avoid Paying The
     Management Fees

20. In or around late 2011, with MPD Restaurant well-established and business booming,

the defendants decided they no longer needed Dual Groupe and decided to cut Dual Groupe out

of the picture and run the restaurant on their own to avoid paying the growing management fees

they were required to pay under the Management Agreement.

21. On or about December 1, 2011, without any reason or justification, the defendants

stopped paying the management fees to Dual Groupe.

22. Through January 22, 2012, the defendants owe Dual Groupe $159,555.35 in

management fees which they have failed and refused to pay.  Dual Groupe has filed a lawsuit in

state court to recover these unpaid fees.  That lawsuit is currently pending.

23. In addition to the unpaid management fees, Gans-Mex also owes Dual Groupe the

sum of $85,478.17 under a secured promissory note dated June 23, 2010.  Dual Groupe has filed

a motion for summary judgment in lieu of complaint in state court to recover this money.  That

motion is currently pending.

24. On or about January 30, 2012, the defendants purported to unilaterally terminate the

Management Agreement and remove Dual Groupe from the operation and management of MPD

Restaurant.

25. Insofar as the Management Agreement is terminated and Dual Groupe is no longer

operating and managing the restaurant, the license granted by Dual Groupe to use the Mark in

connection with the restaurant is also terminated pursuant to the Management Agreement.

26. Nevertheless, the defendants have continued to use the Mark in connection with the

restaurant and have continued to market, promote and operate the restaurant under the name

"MPD Restaurant". Notably, on February 1, 2012, two days after terminating the Management Agreement, Brunetti registered the Internet domain name "MPDRESTAURANT.COM". (A true and correct copy of the receipt showing Brunetti's registration of the domain name "MPDRESTAURANT.COM" is attached hereto as Exhibit D).

27. The defendants' use of the Mark is unauthorized and without Dual Groupe's consent.

28. By using the Mark in connection with the restaurant after terminating the Management Agreement, the defendants are unfairly capitalizing on Dual Groupe's reputation, goodwill, and standing.

## COUNT I
### Trademark Infringement And
### False Designation Of Origin
### (Lanham Act, 15 U.S.C. § 1125(a))

29. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth at length herein.

30. Dual Groupe is the owner of the Mark.

31. The Mark is entitled to protection under the Lanham Act.

32. As a result of the successful marketing and promotion and operation of the restaurant under the MPD name, significant goodwill has accrued in the Mark.

33. Defendants have used and are continuing to use the Mark in commerce in connection with its goods and services without Dual Groupe's consent.

34. Upon information and belief, defendants' willful, intentional and wrongful use of the Mark as described above has caused consumers to mistakenly believe that the defendants are affiliated with, are sponsored by, are approved by, or are otherwise associated with Dual Groupe and/or the MPD brand.

35. Defendants' willful, intentional and wrongful use of the Mark will likely cause confusion among consumers as to the affiliation, connection or association of defendants with Dual Groupe and/or the MPD brand.

36. Defendants' conduct was done knowingly, willfully, in bad faith, and/or in gross reckless disregard for Dual Groupe's rights.

37. Defendants' conduct was done with the purpose and intent of undermining the integrity and value of the Mark.

38. Defendants' willful, intentional and wrongful use of the Mark constitutes trademark infringement and/or false designation of origin in violation of Dual Groupe's rights under the Lanham Act, 15 U.S.C. § 1125(a)(1).

39. As a result of the foregoing, Dual Groupe has suffered irreparable harm and is entitled to preliminary and permanent injunctive relief enjoining defendants from continuing to use the Mark in connection with their restaurant.

40. As a result of the foregoing, Dual Groupe has been injured and is entitled to damages in an amount to be determined at trial, which shall include defendants' profits and plaintiff's costs and attorneys' fees.

**COUNT II**
**Trademark Dilution**
**(Lanham Act, 15 U.S.C. § 1125(c))**

41. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth at length herein.

42. The Mark is a distinctive and famous mark.

43. Defendants' willful, intentional and wrongful use of the Mark as described above has diluted and is diluting the distinctive and famous quality of the Mark.

44. By using the Mark in connection with defendants' goods and services, defendants have caused and will cause the Mark to lose its ability to serve as a unique identifier of Dual Groupe's goods and services, resulting in dilution of the Mark by blurring.

45. Further, by using the Mark in connection with defendants' goods and services, which are of inferior quality, the Mark has suffered and will suffer tarnishment and lose its ability to serve as a "wholesome identifier" of Dual Groupe's goods and services.

46. Upon information and belief, defendants are willfully trading and intend to trade on Dual Groupe's reputation and goodwill and to cause dilution of the distinctive quality of the Mark.

47. As a result of the foregoing, Dual Groupe has suffered irreparable harm and is entitled to preliminary and permanent injunctive relief enjoining defendants from continuing to use the Mark in connection with their restaurant.

48. As a result of the foregoing, Dual Groupe has been injured and is entitled to damages in an amount to be determined at trial, which shall include defendants' profits and plaintiff's costs and attorneys' fees.

### COUNT III
### Trademark Infringement
### And Unfair Competition
### (New York State Law)

49. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth at length herein.

50. Defendants' willful, intentional and wrongful use of the Mark as described above has caused confusion and misled and deceived the public as to the origin, sponsorship, nature, characteristics, and qualities of defendants' restaurant.

51. Defendants' conduct was done knowingly, willfully, in bad faith, and/or in gross reckless disregard for Dual Groupe's rights.

52. Defendants' conduct was done with the purpose and intent of undermining the integrity and value of the Mark.

53. Defendants' conduct constitutes trademark infringement and unfair competition in violation of Dual Groupe's rights under New York state law.

54. Defendants were and continue to be unjustly enriched as a result of their conduct.

55. As a result of the foregoing, Dual Groupe has suffered irreparable harm and is entitled to preliminary and permanent injunctive relief enjoining defendants from continuing to use the Mark in connection with their restaurant.

56. As a result of the foregoing, Dual Groupe has been injured and is entitled to damages in an amount to be determined at trial, which shall include defendants' profits and plaintiff's costs and attorneys' fees.

## COUNT IV
### Trademark Dilution
### (New York State Law)

57. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth at length herein.

58. Defendants' willful, intentional and wrongful use of the Mark as described above has diluted and is diluting the distinctive and famous quality of the Mark in violation of Dual Groupe's rights under New York state law.

59. As a result of the foregoing, Dual Groupe has suffered irreparable harm is entitled to preliminary and permanent injunctive relief enjoining defendants from continuing to use the Mark in connection with their restaurant.

60. As a result of the foregoing, Dual Groupe has been injured and is entitled to damages in an amount to be determined at trial, which shall include defendants' profits and plaintiff's costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Dual Groupe demands that the Court enter and award judgment in favor of plaintiffs as follows:

A. On all counts, granting preliminary and permanent injunctive relief enjoining defendants and their agents, servants, employees, officers, directors, successors and assigns, and all persons, firms and corporations acting in concert or participation with defendants or on defendants' behalf, from continuing to use the Mark in connection with their restaurant.

B. On Counts I, II, III, and IV, judgment in an amount to be determined at trial, which shall include damages, defendants' profits, and plaintiff's costs and attorneys' fees; and

C. Plaintiff's attorneys' fees, interest, costs, disbursements of this action, and such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38, plaintiffs demand a trial by jury.

Dated: New York, New York
       February 8, 2012

SAVITT LAW FIRM PLLC

By: _____
Richard P. Savitt (RS-5746)
Bryan Ha, Of Counsel (BH-5295)
460 West 34th Street, Mezzanine
New York, New York 10001
Telephone: 917-414-2523
Attorneys for Plaintiff Dual Groupe, LLC

**EXHIBIT A**

## MANAGEMENT AGREEMENT

**MANAGEMENT AGREEMENT** made this 21st day of December 2009 by and between **GANS-MEX LLC**, a New York limited liability company, with its principal place of business at 73 Gansevoort Street, New York, New York ("Owner") and **DUAL GROUPE LLC**, a New York limited liability company with its principal place of business at 9 West 19th St, 2nd Floor, New York, New York, 10011 ("Management Company" or "Management").

## R E C I T A L S :

**WHEREAS**, Owner is the owner and operator of a restaurant known as Los Dados or whatever name that it shall be called (the "Restaurant") located at 73 Gansevoort Street, New York, New York, together with all of the assets, including the furniture, fixtures and leasehold improvements, leased thereto;

**WHEREAS**, Owner desires to avail itself of the benefits and advantages of Management Company's expertise in the management and operation of the Restaurant, and Management Company desires to be engaged by Owner in such capacity; and

**WHEREAS**, Owner and Management Company desire to set forth in this Management Agreement all of their respective rights and obligations in connection with the management of the Restaurant.

**WHEREAS**, Management Company is the sole owner of a brand known as MPD and is willing to license said brand to Owner for the term of this agreement for use at the location known as 73 Gansevoort Street

**NOW, THEREFORE**, the parties agree as follows:

**Definitions.** *Unless the context otherwise requires, for all purposes of this Agreement (as hereinafter defined), all capitalized terms used in this Agreement without definition shall have the respective meanings thereof set forth or referred to below:*

1.1      The term "Affiliate" means with reference to any Person, any director, officer or employee of such Person, any Person in which such Person has a direct or indirect controlling interest or by which such Person is directly or indirectly controlled or which is under direct or indirect common control with such Person

1.2      The term "Agreement" means this Agreement, including all exhibits hereto, as the same may be amended or otherwise modified from time to time, and the terms "herein", "hereof", "hereunder" and like terms shall be taken as referring to this Agreement in its entirety and shall not be limited to any particular section or provision hereof.

1.3      *The term "Commencement Date" means the date hereof.*

1.4      *INTENTIONALLY OMITTED.*

1.5      The term "Expiration Date" means the expiration date of the Lease (the last day of September 2016) or such later time as the Lease may expire;

1.6      The term "Fiscal Year" means the fiscal year of Owner.

1.7     The term "Gross Receipts" means all of receipts of every nature including, but not limited to: (i) the sale of all food, beverages or services, whether such sales are for cash or on credit, (ii) income from concessionaires or vending machine operations at the Restaurant, and (iii) admission charges, entertainment charges, overcharges, or other fees, (iv) and merchandise; but shall be deemed to exclude (a) any sales, excise, cabaret or entertainment taxes, (b) any gratuities paid or credited to employees, (c) any uncollectible credit charges or bad checks, (d) refunds and cash register over-rings.

1.8     The term "Lease" means that certain Lease Agreement dated 20th of July of 2006 Modified and Amended the 1th day of February 2009 between 817-33 Washington Street LLC, as landlord, and Owner, as the tenant thereunder as the same may be amended or supplemented.

1.9     The term "Management Company" or "Management" is defined in the Preamble.

1.10     The term "Management Fee" is defined in Section 3.2.

1.11     INTENTIONALLY OMITTED.

1.12     INTENTIONALLY OMITTED.

1.13     The term "Owner" is defined in the Preamble.

1.14     The term "Person" shall include an individual, a partnership, a limited liability company, a joint venture, a corporation, a trust, an estate, an unincorporated organization and a governmental agency.

1.15     The term "Premises" means the Restaurant premises located at 27 Gansevoort Street, New York, New York.

1.16     The term "Annual Budget" means the annual operating budget of the Owner with respect to the operation of the Restaurant, a form of which is attached hereto as Exhibit B.

1.17     The term "Restaurant" is defined in the Recitals.

## 2.     Term

2.1     The term of this Agreement shall commence as of the Commencement Date and continue until the Expiration Date and each unless sooner terminated as provided herein. Notwithstanding the foregoing the parties agree to meet to review of the overall results of this agreement on the 1 anniversary of this agreement.

2.2     Management Company shall have the right to terminate this Agreement at any time upon 30 days prior written notice to Owner provided it is then in compliance with the terms of this Agreement.

2.3     Owner shall have the right to terminate this Agreement if Management Company, in 2 or more consecutive Lease Years, has failed to generate Gross Receipts in excess of Three million dollars per annum. If Owner elects to exercise this right, Owner shall so notify Management Company within (90) days of termination date giving Management Company reasonable period to cure. So long as the Management Company has remedied by having a run rate of annualized sales of Three million within the cure period then Owner shall not be permitted to terminate this agreement.

## 3.     Engagement and Duties of Management Company; Payments.

3.1     Owner hereby engages Management Company and Management Company hereby agrees to be engaged by Owner as a management consultant with respect to the Restaurant upon

*Page 2 of 9*



the terms and conditions hereinafter set forth. Upon the request by Owner. Management Company agrees to consult with and provide verbal guidance to. Owner with respect to the on-going operations of the Restaurant   Management Company shall have full control and discretion over the operations of the premises. Further, pursuant to a Secured Promissory Note attached as Exhibit A, Management Company agrees on its signing of this Agreement to provide Fifty Percent (50%) of the capital required for the refurbishment of the Restaurant up to a maximum of Seventy Five Thousand Dollars and 00/100 ($75,000 USD).

3.11 Management Company shall have the right to control all aspects of the Restaurant including but not limited to promotions. entertainment, hiring and firing personnel, determining hours over such personnel and setting staff count. Management Company shall pay for the promotion expenses.  However in the event that the Owner shall discover immoral behavior on the part of an employee, it shall inform the Management Company and the Management Company shall have a 3 day window to cure it, if the Management Company does not correct the issue, the Owner shall have the right to terminate the employee in question.

3.12 All orders shall be placed through the Owner. Owner shall place the order within twenty four hours of receiving the request from management. Additionally Management will maintain the reservation list and at all times will determine which customers are to be seated in the Restaurant. Management shall not have authority to permit overtime by employees.

3.2    For its services hereunder, Management Company shall be paid without set off a fee ("Management Fee") in an amount equal to the following schedule (i) Eight and a Half Percent (8.5%) of the Gross Receipts of the Restaurant from zero ($0.00) and up to Three Million Dollars ($3,000,000.00) (ii) Ten Percent (10%) of the Gross Receipts of the Restaurant from Three Million One Dollars ($3,000,001.00) and up to Three Million Five Hundred Thousand Dollars ($3,500,000.00) (iii) Twelve Percent (12%) of the Gross Receipts of the Restaurant from Three Million Five Hundred Thousand One Dollars ($3,500,001.00) and up to Four Million Dollars ($4,000,000.00) (iv) Fifteen Percent (15%) of the Gross Receipts of the Restaurant from Four Million One Dollars ($4,000,001.00) and above.

3.2.1   Management Company shall select an operating manager to be paid from the operations of the restaurant at a salary rate not to exceed forty  five thousand dollars ($45,000 per year.

3.3    (ii) Twenty percent (20%) of the Gross Receipts of the Saturday and Sunday Brunch which is to take place on the premises.

3.4    If this Agreement is terminated pursuant to Sections 2.2, Management Company shall be entitled to receive and retain the amounts payable to it under Sections 3.2 and 3.3 through the effective date of such termination.

3.5    Owner agrees to segregate and provide for separate accounting systems as well as provide for a separate bank account. Management Company shall be entitled to view the bank statements to ascertain that payments have been made for sales taxes, payroll taxes, salaries, food and liquor for the Restaurant. Owner acknowledges and consents that for the life of this contract Management Company shall be entitled to weekly sweeps and payment direct from the operating account for their benefit in conformance with the Management fees described in this agreement.

3.6    Owner shall operate and the Restaurant during the term of this Agreement in accordance with all applicable laws

3.7    Management Company shall keep comps to under five percent (5%) of the gross revenues of the Restaurant and lounge. The comps will be priced at the cost of the establishment. For example $10,000 in sales shall generate no more than a comp of $500 of product to be given at cost. For example in the case of Rose' cost being $7 per bottle. Food comp will be charged at 30% of the menu price.

3.8    For the Saturday and Sunday brunch Comps are not to exceed Ten Percent (10%).

3.9    So long as Management Company is engaged to manage the premises at 73 Gansevoort, Management Company will license to the Owner the use of the brand MPD on a royalty free basis in the Restaurant

### Restaurant Operations.

From and after the Commencement Date, Owner shall have a weekly meeting as to the persons that the Management Company intends to hire for the upcoming week such as Doorman, DJ, or special performers. Such weekly expenditures shall be at the sole discretion of the Owner and viewed at as an as needed basis. Owner acknowledges that the Management Company requires certain of these expenditures to complete the transformation of the space to a different concept

5.    **Annual Budget.** By no later than the end of the first week during each calendar year, Owner shall deliver to Management Company the Operating Budget with respect to the following calendar quarter. Management Company will have discretion to make changes to the budget as it sees fit. The Management Company shall use its professional experience and best efforts to minimize the Operating budget and keep expenditures at a minimum.

### Financial Statements.

6.1    Owner hereby covenants and agrees that from and after the Commencement Date, Owner will:

6.1.1    furnish to Management Company daily the print outs from the terminals or Point of Sale terminals, and

6.1.2    furnish to Management Company within ninety (90) days after the end each Fiscal Year, statements of operations of the Restaurant for such Fiscal Year.

6.2    Management Company or its agents or its designees will have the right at any reasonable time during normal business hours, upon reasonable prior notice, to examine the books and records with respect to weekly sales of the Restaurant.

### Representations of Owner.  Owner represents and warrants that:

7.1    The owner represents and warrants throughout the term of this agreement Owner is and will continue to remain a limited liability company duly organized validly existing and in good standing under the laws of the State of New York and has all requisite power and authority to own, lease and operate its properties and carry on its business as and in places where such properties are now owned, leased or operated or such business is now *being conducted.*

7.2    Annexed hereto as Exhibit "C" is a true and correct copy of the Lease.



8. **Indemnification.**

8.1    Owner agrees to indemnify and hold Management Company, its officers, directors, and members harmless from any and all claims, liabilities, losses or costs including all professional fees reasonably incurred by Management Company by reason of (i) any claim relating to the operation of the Restaurant or (ii) any negligent or willful misconduct of Owner, its officers, directors, employees, customers or members or breach by Owner of the representations, warranties, covenants and agreements made by Owner under this Agreement or under any agreement with Management Company entered into in connection herewith.  For purposes of this Section, the party entitled to indemnification shall be known as the "Injured Party" and the party required to indemnify shall be known as the "Other Party".  In the event that the Owner shall be obligated to Management Company (or any of its affiliates) pursuant to this Article or in the event that a suit, action, investigation, claim or proceeding is begun, made or is alleged as a result of which the Owner may become obligated to Management Company to any of its affiliates) hereunder, shall give prompt written notice to the Owner of the occurrence of such event.  The Owner agrees to defend, contest or otherwise protect against any such suit, action, investigation, claim or proceeding at the Owner's own cost and expense by counsel reasonably acceptable to the Management Company (or any of its affiliates).  The Management Company (or any of its affiliates) shall have the right but not the obligation to participate at its own expenses in the defense thereof by counsel of its own choice.  In the event that the Owner fails timely to defend, contest, or otherwise protect against any such suit, action, investigation, claim or proceeding, the Management Company (or any of its affiliates) shall have the right to defend, contest or otherwise protect against the same and may make any compromise or settlement thereof and recover the entire cost thereof from the Management Company (or any of its affiliates) including, without limitation, reasonable attorneys' fees, disbursements and all amounts paid as a result of such suit, action, investigation, claim or proceeding or compromise or settlement thereof.

8.2    Management Company agrees to indemnify and hold Owner, its officers, directors, and members harmless from any and all claims, liabilities, losses or costs including all professional fees reasonably incurred by Owner by reason of (i) any claim relating to the operation of the Restaurant or (ii) any negligent or willful misconduct of Management Company, its officers, directors, employees, customers or members or breach by Management Company of the representations, warranties, covenants and agreements made by Management Company under this Agreement or under any agreement with Owner entered into in connection herewith.  For purposes of this Section, the party entitled to indemnification shall be known as the "Injured Party" and the party required to indemnify shall be known as the "Other Party".  In the event that the Management Company shall be obligated to Owner (or any of its affiliates) pursuant to this Article or in the event that a suit, action, investigation, claim or proceeding is begun, made or instituted as a result of which the Management Company may become obligated to Owner (or any of its affiliates) hereunder, Owner shall give prompt written notice to the Management Company of the occurrence of such event.  The Management Company agrees to defend, contest or otherwise protect against any such suit, action, investigation, claim or proceeding at the Management Company's own cost and expense by counsel reasonably acceptable to the Owner (or any of its affiliates).  The Owner (or any of its affiliates) shall have the right but not the obligation to participate at its own expenses in the defense thereof by counsel of its own choice.  In the event that the Management Company fails timely to defend, contest or otherwise protect against any such suit, action, investigation, claim or proceeding, the Owner (or any of its affiliates) shall have the right to defend, contest or otherwise protect against the same and may make any compromise or settlement thereof and recover the entire cost thereof from the Owner (or any of its affiliates) including, without limitation, reasonable attorneys' fees, disbursements and all amounts paid as a result of such suit, action, investigation, claim or proceeding or compromise or settlement thereof.

9.    **Notices.**    All notices, requests, demands, or other communications desired or required to be given under any of the provisions hereof shall be in writing and shall be mailed y registered

or certified mail, return receipt requested, or delivered electronically to the address below, or any other address designated by either party :

If to Owner:

GANS-MEX LLC
73 Gansevoort Street
New York, NY 10014

If to Management Company:

DUAL GROUPE LLC
9 West 19 St, 2 Floor
New York, NY 10011

or at such other address or addresses as the parties may therefore have furnished by such notice and other Notices shall be deemed given on the date received by either party as the case may be.

### Miscellaneous.

10.1    This Agreement and the exhibits hereto constitute the entire agreement between the parties and supersedes all prior agreements or understanding, oral or written.  No representation or warranty, express or implied, is made by any party hereto except as expressly set forth herein.  No amendment, change, or modification of this Agreement shall be binding unless the same shall be in writing and signed by both parties thereto.

10.2    The parties hereto agree to do such further acts and things and to execute and deliver such additional conveyances, assignments, agreements and instruments as either may at any time reasonably request in order to better assure and conform unto each party their respective rights, powers and remedies conferred hereunder.

10.3    This Agreement shall be subject to New York law.  Any dispute under this Agreement shall be brought exclusively in the courts located in New York, NY.  The non-prevailing party in any dispute shall be required to pay reasonable attorneys' fees and expenses of the prevailing party.

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date first above written.

GANS-MEX LLC

By:
Name:
Title:

DUAL GROUPE LLC

By:
Name:
Title:

## Exhibit A

### Form of Secured Promissory Note

Exhibit B

Form of Annual Operating Budget

## Exhibit C

### Restaurant Lease

**EXHIBIT B**

# 20
# MICHELIN GUIDE RECOMMENDED

## MPD                                                French ✗✗

Short for *mon petit déjeuner* (my breakfast), the acronym used as the moniker of this spacious boîte references both its Gallic roots as well as its Meatpacking District location. As expected, the look here is chic, clad in whitewashed brick and warmed by chocolate brown furnishings; deep booths offer a comfy perch for those who want to feel like a VIP. Despite the DJ booth behind the maître d' stand, there is as much substance as style here, thanks to the kitchen.

Carpaccio-style *cru de salmon* is served as paper-thin tartare with crème fraîche and a drizzle of preserved-lemon purée; and the beautifully cooked saffron-crusted rack of lamb is even tastier when paired with the Périgord truffle and potato croquettes featured among the sides.



**EXHIBIT C**

 **OpenTable®**    Restaurant Reservations - Free • Instant • Confirmed

Home  Sign In

OpenTable Home > New York / Tri-State Area Restaurants > Hot Spot: Manhattan

## Refine Location

🔘 All New York / Tri-State Area
◉ Manhattan
⚪ Brooklyn
⚪ Westchester / Hudson Valley
  More ›

## Select a List

**Ratings**
Best Overall
Best Ambiance
Best Service
Best Food
  American
  Asian
  Chinese
  French
  (+More)

**Special Features**
Fit for Foodies
Good for Groups
Great for Brunch
Great for Lunch
Hot Spot
Kid Friendly
Late Night Find
Neighborhood Gem
Notable Wine List
Romantic
Scenic View
Special Occasion
Vibrant Bar Scene

**Most Booked**
Manhattan
1000-Point Tables

## Hot Spot Restaurants - Manhattan

| Date mm/dd/yyyy | Time | Party Size | |
|---|---|---|---|
| 02/07/2012 | 7:00 PM ▼ | 2 people ▼ | **Find a Table** |

### 10 Diners' Choice Winners

| Restaurant Name | Price |
|---|---|
| **Catch**<br>Meatpacking District \| Seafood | $$$ |
| **Brasserie Beaumarchais**<br>Meatpacking District \| French | $$$ |
| **Beauty and Essex**<br>Lower East Side \| Tapas / Small Plates | $$$ |
| **STK - NYC - Midtown**<br>Midtown West \| Steakhouse | $$$ |
| **Marble Lane**<br>Meatpacking District \| Contemporary American | $$$$ |
| **CO-OP Food & Drink**<br>Lower East Side \| American | $$$ |
| **MPD Restaurant**<br>Meatpacking District \| Contemporary French | $$$ |
| **The Vinatta Project**<br>Meatpacking District \| Global, International | $$ |
| **STK - NYC - Meatpacking**<br>Meatpacking District \| Steak | $$$ |
| **Pulqueria**<br>Chinatown \| Mexican | $$ |

As voted by more than 2,049,400 diners. Learn More>

**Featured Cities**
Atlanta Restaurants
Boston Restaurants
Chicago Restaurants
Denver Restaurants
Las Vegas Restaurants
London Restaurants

Los Angeles Restaurants
New York Area Restaurants
Philadelphia Restaurants
San Francisco Restaurants
Seattle Restaurants
Washington DC Restaurants

**Popular on OpenTable**
toptable
Private Dining
Restaurant Weeks
Diners' Choice 2011 Winners
OpenTable Blog
OpenTable Mobile

**More Information**
About OpenTable
Restaurateurs: Join Us
Dining Rewards
Reserve for Others
Affiliate Program
Advertise
Sitemap

Privacy Policy | Copyright © 2012 OpenTable, Inc. All rights reserved. | OpenTable Terms of Use

**EXHIBIT D**

Gmail - FW: go daddy receipt



# FW: go daddy receipt

1 message

**From:** Georgia Reid [mailto:glareid@gmail.com]
**Sent:** Friday, February 03, 2012 1:32 PM
**To:** Derek M. Koch
**Subject:** go daddy receipt

## Go Daddy
### PRINT
Receipt#: 396337013

DATE: 2/1/2012 12:43:58 PM

Customer #: 49587744

**Billing Information**

Tatiana Brunetti
Gans Mex LLC
73 Gansevoort Street

s://mail.google.com/mail/?ui=2&ik=81eca30550&view=pt&q=go daddy&...

1/2

Gmail - FW: go daddy receipt

New York, NY 10014
US
Daytime Phone: <u>212-541-6991</u>
Email: <u>yan@ginzaproject.us</u>

**Name: Tatiana Brunetti**
**Paid: Visa ($79.03)**
**Account Number: ###########9175**

| Label | Name | Attributes | Today's Unit Price | ICANN Price | fee | Qty | Extra Disc. | Total Price |
|---|---|---|---|---|---|---|---|---|
| 101-1 | .COM Domain Name Registration - 1 Year (recurring) | | $12.99 | $9.99 | $0.18 | 1 | $8.00 | $2.17 |
| | Length: 1 | | | | | | | |
| | Domain: _MPDRESTAURANT.COM_ | | | | | | | |
| | ⌐_____ |Show Domains | | | | | | | |
| 7001-1 | Private Registration Services | | $9.99 | $9.99 | $0.00 | 1 | $2.99 | $7.00 |
| | Length: 1 Year(s) | | | | | | | |
| | Domain: _MPDRESTAURANT.COM_ | | | | | | | |
| | ⌐_____ |Show Domains | | | | | | | |
| 84-1 | Business Registration | | $4.99 | $4.99 | $0.00 | 1 | $0.00 | $4.99 |
| | Length: 1 Year(s) | | | | | | | |
| | Domain: _MPDRESTAURANT.COM_ | | | | | | | |
| 182-1 | Certified Domain | | $4.99 | $4.99 | $0.00 | 1 | $0.00 | $4.99 |
| | Length: 1 | | | | | | | |
| | Domain: _MPDRESTAURANT.COM_ | | | | | | | |
| 759-1 | Email - Unlimited (Unlimited Storage/10 Boxes) - (recurring) | | $35.88 | $35.88 | $0.00 | 1 | $10.88 | $25.00 |
| | Length: 1 Period(s) | | | | | | | |
| 807-1 | Unlimited Group Calendar (Unlimited Users) (annual) | | $24.99 | $24.99 | $0.00 | 1 | $5.99 | $19.00 |
| | Length: 1 Period(s) | | | | | | | |
| 3802-1 | Economy Online Storage / File Folder (10 GB) (annual) | | $17.88 | $17.88 | $0.00 | 1 | $2.00 | $15.88 |
| | Length: 1 Period(s) | | | | | | | |

**Subtotal: $79.03**
**Shipping & Handling:**
**Tax: $0.00**

Gmail - FW: go daddy receipt

**Total (United States Dollars): $79.03**

--

georgia d. reid

MPD